This is an accelerated appeal taken from a final judgment of the Domestic Relations Division of the Lake County Court of Common Pleas. Appellant, Bonnie L. Sanderson-Chavez, appeals from the parenting arrangement established by the trial court in a decree of divorce. For the following reasons, we affirm the judgment of the trial court.
Appellant and appellee, Michael Chavez, were married on July 20, 1991. The couple had two daughters as a result of their union. At some point during the marriage, appellant began to engage in a relationship with another man. One night in late April 1996, a heated confrontation occurred between appellee and appellant's paramour which culminated in the other man stabbing and severely wounding appellee. Appellant was present during this incident.
On May 13, 1996, appellee filed a complaint for divorce and requested that he be given temporary custody of the children during the pendency of the litigation. In the complaint, he also asked to be designated as the residential parent and legal custodian of the girls following the divorce. Appellant filed an answer on June 4, 1996.
Subsequently, the parties came to an agreement concerning temporary custody, and the trial court issued a judgment entry on August 29, 1996 naming appellant as the temporary residential parent and legal custodian during the pendency of the proceedings. Appellee was granted standard visitation rights pursuant to the same order. This custody arrangement remained in effect until January 1997. At that time, appellant was convicted of obstruction of justice in relation to the earlier stabbing incident and was sentenced to thirty days in the Lake County Jail.
Due to the fact that appellant was about to be incarcerated, appellee filed a motion for temporary custody of the children on January 16, 1997. After conferring with counsel for both parties, the trial court granted the motion on the same day and ordered that the custody arrangement remain in effect while appellant was incarcerated. Following appellant's release from jail, the order was subject to rehearing at the request of either party. Counsel for both parties signed the entry.
Several weeks later, on February 4, 1997, appellant filed a motion requesting a rehearing and redetermination of the trial court's previous order The basis of the motion was that she soon was scheduled to be released from jail. Pursuant to R. C.3109.04(G), appellant thereafter filed a proposed shared parenting plan naming herself as primary residential parent, but granting appellee significant access to his daughters.
By the time the motion for rehearing was filed, a trial had already been scheduled for March 18, 1997 on the divorce complaint. At the start of the divorce proceeding before a magistrate, counsel for appellee orally moved to amend the complaint to include incompatibility as a basis for terminating the marriage. The magistrate granted the motion. Thereafter, both appellee and appellant, through questioning by their respective counsel, testified briefly as to the demise of the marriage. The parties had previously worked out an agreement with respect to everything except the allocation of parental rights and responsibilities. The magistrate read this agreement into the record, and both parties indicated their assent to it.
At the close of this proceeding, the magistrate indicated that the parties had submitted a joint motion for mediation of all the issues involving parental rights and responsibilities. There is no indication in the record that appellant or her counsel ever raised the issue of her earlier motion regarding temporary custody.
Nevertheless, nine days later on March 27, 1997, appellant filed a second motion requesting a rehearing of the temporary custody order. On the same day, the parties were assigned a mediator.
Subsequently, counsel for appellant apparently engaged in a telephonic conference with the magistrate regarding the second motion for rehearing. The trial court file, however, is devoid of any official record of the telephone call. Following this conversation, appellant's counsel moved to dismiss the March 27, 1997 motion. The magistrate granted the motion to dismiss by an order dated April 24, 1997.
Efforts at mediation failed, and the matter came on for trial before the magistrate on July 28, 1997. The magistrate issued a lengthy written decision, including findings of fact and conclusions of law, on August 18, 1997. Some of the pertinent recommendations made by the magistrate were as follows: (1) appellee was entitled to a divorce based on incompatibility; (2) shared parenting was in the best interest of the children; (3) appellee should be named the primary residential parent for school purposes; (4) appellant should have custody of the children on alternating weekends, overnight on each Wednesday until the following morning, one-half of Christmas break and spring break, and for several weeks in the summer.
Both parties filed objections to the magistrate's decision. Appellee's only objection related to the recommendation that appellant be allowed to pay less child support than the amount calculated using the worksheet.
Appellant objected to the magistrate's recommendation that appellee be named the primary residential parent. According to appellant, the magistrate's recommendation was predicated primarily on the fact that appellee had temporary custody of the girls from January 16, 1997 through the final divorce hearing on July 28, 1997. The gist of her objection was that appellant had filed two motions during that time frame requesting reconsideration of the temporary custody issue.
Appellant also specifically complained that the magistrate had pressured her counsel into withdrawing the March 27, 1997 motion. According to appellant, the magistrate accomplished this by making it clear that the issue of custody would not be reconsidered until the case came on for final hearing as scheduled on July 28, 1997.
Appellant subsequently attempted to file a supplemental objection on September 30, 1997. This objection challenged the recommendation that appellant only be accorded standard visitation rights and asked the trial court to increase the amount of time that the girls would reside with appellant.
On November 13, 1997, the trial court issued a judgment entry overruling all of the objections and adopting the August 18, 1997 magistrate's decision. The attorneys were ordered to prepare a final judgment of divorce and shared parenting plan in accordance with the recommendations of the magistrate.
A proposed judgment entry of divorce with an attached shared parenting plan was submitted and approved. It was filed as the judgment of the trial court on January 23, 1998.
From this judgment, appellant timely appealed to this court. She asserts the following assignments of error:
 "[1.] The trial court abused its discretion when it failed to schedule a re-hearing on the issue of temporary custody pursuant to the terms of the court's entry of January 17, 1997.
 "[2.] The trial court erred as a matter of law when it reviewed the Magistrate's Decision under the abuse of discretion standard.
 "[3.] The trial court erred as a matter of law when it overruled Appellant's objection regarding the alleged misconduct of the magistrate on the basis that the trial court could not review the allegations during the objection process.
 "[4.] The trial court abused its discretion when it named Plaintiff the residential parent for school purposes.
 "[5.] The trial court abused its discretion when it refused to consider expanding the visitation schedule ordered by the Magistrate."
In her first assignment of error, appellant claims that the trial court abused its discretion by failing to schedule a rehearing on the issue of temporary custody. As described earlier, the trial court shifted custody of the children from appellant to appellee in its judgment entry of January 16, 1997. In the entry, there is a handwritten notation that reads: "The order shall remain in effect for the period of time in which Defendant Sanderson-Chavez is in the Lake County Jail. At the time of her release, the order shall be subject to re-hearing at the request of either party." The notation appears to have been written by counsel for appellant. The trial court, however, signed the entry, thereby presumably giving its approval to the language included therein.
Appellant requested such a rehearing in her two motions mentioned previously. On appeal, appellant initially seems to imply that it was somehow understood that the trial court would shift temporary custody of the children back to her following her incarceration. The January 16, 1997 entry, however, did not state anything to that effect. It did not contain any language which guaranteed or even predisposed such an outcome.
A change in temporary custody pendente lite will usually not be made unless such a change would be in the best interest of the children. See, e.g., Doerger v. Doerger (Feb. 20, 1990), Brown App. No. CA89-05-007, unreported, at 7, 1990 Ohio App. LEXIS 577 (observing that the trial court considered the best interest of the children when shifting temporary custodypendente lite from the father to the mother). A trial court, however, does not need to apply the same level of scrutiny required under R.C. 3109.04 when awarding or modifying final custody of children. Id. The ultimate goal, of course, is to inflict the least possible disruption on the children's lives. In her two motions, appellant did not set forth any compelling reason as to why the trial court should have altered the custodial status of the children prior to the final divorce hearing.
Appellant also claims that the trial court's failure to hold the requested hearing on the issue of temporary custody ultimately prejudiced her opportunity to be named as the primary residential parent. According to appellant, the magistrate recommended that appellee be named the primary residential parent for school purposes out of a simple desire to maintain the status quo. In other words, appellant was prejudiced because she had been in the position of being the noncustodial parent since January 16, 1997, even though she had twice requested the trial court to reconsider the matter.
Upon review, we fail to discern any abuse of discretion by the trial court. Appellant filed her first motion requesting a rehearing on the temporary custody issue on February 4, 1997, while still incarcerated in the Lake County Jail. By the time appellant finished serving her sentence, the case was scheduled to proceed to trial before the magistrate on March 18, 1997.
Appellant, however, failed to raise the issue at the outset of the March 18, 1997 trial on the merits of the divorce complaint. In fact, the transcript demonstrates that appellant and her counsel did not raise the topic during this proceeding.
Subsequently, appellant renewed her motion for temporary custody on March 27. 1997, and a hearing was apparently scheduled to consider its merits. Prior to the hearing, counsel for appellant engaged in a telephonic conference with the magistrate. Appellant now claims that her counsel felt pressured to withdraw the motion because the magistrate did not want to consider any change in temporary custody until the matter came on for final hearing.
Whatever the substance of the telephonic conference between the magistrate and appellant's counsel, the fact remains that the March 27, 1997 motion was voluntarily dismissed. Given this, it can not be said that the trial court abused its discretion by not holding a hearing on a motion that had been withdrawn.
Therefore, a review of the record reveals that appellant was afforded the chance to argue her first motion at the March 18, 1997 trial, but that she did not avail herself of the opportunity to do so. Moreover, after renewing her request for a rehearing on the issue of temporary custody, appellant withdrew the second motion. No abuse of discretion has been demonstrated in the record with regard to either motion. Appellant's first assignment lacks merit.
In her second assignment of error, appellant contends that the trial court erred by applying an abuse of discretion standard when it reviewed the August 18, 1997 decision of the magistrate. According to appellant, the trial court should have conducted a de novo review of the magistrate's decision.
Appellant cites the decision of the Second District Court of Appeals in Rammel v. Rammel (May 9, 1997), Montgomery App. No. 15887, unreported, 1997 Ohio App. LEXIS 2625. In Rammel, the court made the following observations:
 "Magistrates are neither constitutional nor statutory courts. Magistrates and their powers are wholly creatures of rules of practice and procedure promulgated by the Supreme Court. Therefore, magistrates do not constitute a judicial tribunal independent of the court that appoints them. Instead, they are adjuncts of their appointing courts, which remain responsible to critically review and verify the work of the magistrates they appoint. * * *
 "The 'abuse of discretion' standard that the trial court applied to review the decision of its magistrate is an appellate standard of review. It is applicable to the review performed by a superior court of the judgments and orders of inferior courts. Inherent in the abuse of discretion standard are presumptions of validity and correctness, which acknowledge the independence of the inferior courts by deferring to the particular discretion they exercise in rendering their decisions. Because its magistrate does not enjoy that independence, such presumptions are inappropriate to the trial court's review of a magistrate's decisions. * * * Therefore, a trial court errs when it applies the abuse of discretion standard of review in ruling on Civ.R. 53(E)(3) objections to the decision of the appointed magistrates * * *." (Citation omitted.) Rammel, 1997 Ohio App. LEXIS 2625, at 6-8.
We agree with the Second District's cogent analysis regarding the functions of magistrates and the supervisory role that trial courts exercise over them. A trial court should not simply examine the decision of a magistrate for an abuse of discretion because that is an appellate standard of review.
The question that remains is whether the trial court must always conduct a de novo review of a magistrate's decision. Prior to July 1, 1995, Civ.R. 53 required a trial court to engage in an "independent analysis" of the findings of fact and conclusions of law drawn by a magistrate. Effective July 1, 1995, however, Civ.R. 53 was amended such that the "independent analysis" language was deleted. The rule as it exists today does not specify what standard of review a trial court should apply to a magistrate's decision.
Recently, in the case of In re Gibbs (Mar. 13, 1998), Lake App. No. 97-L-067, unreported, 1998 Ohio App. LEXIS 997, this court had occasion to consider this issue. No consensus could be reached, however, regarding the extent to which a trial court must review the decision of a magistrate. Three different views emerged in Gibbs: (1) one judge concluded that the trial court must always exercise some degree of review over the magistrate's decision, regardless of whether any objections are filed; (2) one judge concluded that the amended version of Civ.R. 53 requires the trial court to conduct an independent review of the magistrate's decision only when objections are filed by a party; and (3) one judge concluded that Civ.R. 53 as amended only mandates an independent review when findings of fact and conclusions of law are required under Civ.R. 53(E)(2).
Despite the lack of unanimity in Gibbs regarding the scope of a trial court's review of a magisterial decision, a majority of this court believes that the trial court must still engage in an independent analysis of a magistrate's decision when objections are filed by a party. Although the "independent analysis" language may have been deleted by the July 1, 1995 amendments to Civ.R. 53, the trial court must still conduct ade novo review when any objections are filed.
In the case sub judice, both appellant and appellee filed objections to the decision rendered by the magistrate. Consequently, under Civ.R. 53(E), the trial court had a duty to engage in an independent review of the proceedings that took place before the magistrate.
As stated earlier, appellant maintains that the trial court simply reviewed the magistrate's decision under an abuse of discretion standard. The trial court's November 13, 1997 judgment entry overruling the various objections to the magistrate's decision does invoke this concept. However, it was only a passing reference that must be read in its entire context. The trial court wrote:
 "After reviewing the entire transcript of the trial before the Magistrate as well as the Magistrate's Findings of Fact and Conclusions of Law, the court finds the Magistrate did not abuse her discretion, misstate the evidence before her nor reach legal conclusions contrary to law. She considered all of the factors contained in Ohio Revised Code 3109.04. This objection is overruled."
When read in its entirety, the passage indicates that the trial court did indeed conduct a de novo review of the magistrate's recommendation that appellee be named the primary residential parent. The observation that the magistrate "did not abuse her discretion" was not an accurate choice of words given that the trial court actually did review the substantive basis of the magistrate's decision. The trial court's semantic misstep, however, did not amount to prejudicial error. Appellant's second assignment is not well-taken.
In her third assignment of error, appellant argues that the trial court erred in overruling her objection to the magistrate's conduct on the ground that such a claim could not be reviewed during the objection process in the trial court. This alleged error relates back to appellant's March 27, 1997 motion requesting a rehearing on the issue of temporary custody of the children.
As discussed previously, counsel for appellant had a telephonic conference with the magistrate after filing the aforementioned motion. During the course of their conversation, appellant alleges that the magistrate told counsel that she did not want to revisit the question of temporary custody while the divorce itself was still being litigated. One of the objections filed by appellant in response to the decision of the magistrate related to her counsel's contention that he was pressured into withdrawing the motion for temporary custody. In overruling this objection, the trial court wrote the following:
 "If after the phone conference in April of 1997, wife's counsel felt that the Magistrate was heavy handed or had acted inappropriately * * *, the proper avenue would have been to file an affidavit of prejudice and/or a request for the case to be reassigned to another Magistrate and/or a request to confer with the court in the presence of all counsel * * *. None of these avenues were pursued by the complainant. The court must find the objection is overruled."
On appeal, appellant argues that the trial court erred in responding to the objection in this manner. We disagree. Appellant, through her counsel, made no effort to preserve this issue for appeal. A simple notation in her motion to withdraw the March 27, 1997 motion for rehearing, to the effect that appellant wished to reserve her right to object to the magistrate's directive during the telephonic conference, would have sufficed. Alternatively, appellant could have relied on any of the methods referenced by the trial court.
Although not expressly concluding that the issue was waived, the trial court effectively determined that appellant failed to preserve the question of the magistrate's conduct for the objection process by voluntarily withdrawing the motion. We agree. Because this question was essentially waived by appellant, the trial court did not err in overruling the objection thereto. Appellant's third assignment is meritless.
In her fourth assignment of error, appellant posits that the trial court abused its discretion by adopting the magistrate's recommendation that appellee be named the primary residential parent for school purposes. According to appellant, the evidence favored her being named as the residential custodian of the girls.
Under R.C. 3109.04(B)(1), the court must take into account "that which would be in the best interest of the children" when making decisions relating to custody. The "best interest" standard is always applicable, regardless of whether it is an original proceeding or a proceeding to consider a modification of a prior custody order. In re Byerly (Sept. 30, 1998), Portage App. Nos. 97-P-0096 and 97-P-0097, unreported, at 14, 1998 Ohio App. LEXIS 4630. In determining the best interest of children, the court must consider all relevant factors, including, but not limited to, those factors enumerated in R.C.3109.04(F)(1).[1]
The statute is written broadly, thereby requiring a court to consider all factors that affect the best interest of the children. Only in this way can the court make a fully informed decision regarding the allocation of parental rights and responsibilities.
The trial court's decision regarding the custody of children is accorded deference upon review. The Supreme Court of Ohio has stated:
 "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." (Citations omitted.) Miller v. Miller (1988), 37 Ohio St.3d 71, 74; see, also, Pater v. Pater (1992), 63 Ohio St.3d 393, 396.
Thus, the trial court has broad discretion in allocating the custody of minor children. A court of appeals will not reverse the judgment of the trial court in the absence of an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418;Miller, 37 Ohio St.3d at 73-74; Trickey v. Trickey (1952),158 Ohio St. 9, 14; Butler v. Butler (1995), 107 Ohio App.3d 633,636; Silvis v. Silvis (Mar. 27, 1998), Portage App. No. 97-P-0071, unreported, at 11, 1998 Ohio App. LEXIS 1267. An abuse of discretion implies more than simply an error of law or judgment; instead, the trial court's action must have been unreasonable, arbitrary, or unconscionable. Pater, 63 Ohio St. 3
d at 396; Worthington v. Worthington (1986), 21 Ohio St.3d 73,76; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
We turn now to the case at bar. The magistrate determined that shared parenting would be in the best interest of the children, but that appellee should be designated as the primary residential parent for school purposes. Appellant challenges this finding.
A review of the magistrate's decision demonstrates that she addressed each of the enumerated factors set forth in R.C.3109.04(F)(1). In doing so, the magistrate concluded among other things: (1) that the children interacted well and had a good relationship with each parent; (2) that the girls were well adjusted to both parties' homes, school, and community because appellant and appellee lived within three blocks of each other in the same city and school district; (3) that neither parent had willfully denied the other parent's visitation rights in accordance with an order of the court; (4) that both parties encouraged the sharing of love, affection, and contact between the girls and the other parent; and (5) that each party was a good parent who was concerned about the welfare of the children.
Appellant argues that the magistrate recommended that appellee be named the primary residential parent simply to preserve the status quo that had existed since January 16, 1997 when appellee assumed temporary custody of the children due to their mother's pending incarceration. From appellant's perspective, this was an insufficient basis upon which to accord appellee the status of primary residential parent.
Appellant offers little legal authority to support her argument that this was not a valid and important consideration. Appellant's incarceration was a reality that the trial court dealt with by shifting temporary custody of the children to their father while the divorce was still being litigated. While the continuance of this temporary separation may not have been in appellant's best interest, it was certainly reasonable to conclude that the girls' best interests were served by not moving them again pending the final hearing on the divorce complaint.
It is true that the magistrate noted in her written decision that the children had lived in appellee's home since January 1997. Although the magistrate did make reference to this fact, it was certainly not per se error to do so. We do not believe that it was somehow improper for the magistrate to observe that the children's lives would maintain a certain continuity if appellee were named as the primary residential parent.
Moreover, that was not the only factor relied upon by the magistrate in rendering her recommendation that appellee be designated as the residential parent for school purposes. For instance, the magistrate specifically noted that appellee's mother and an adult daughter from a prior relationship were both available to assist appellee in watching the girls when necessary.
The magistrate essentially found that both parents were well-suited to care for the children. As a result, she recommended that appellee and appellant each be designated as residential parent and legal custodian when the girls were in his or her respective home. From a practical standpoint, however, it was necessary to designate a primary residential parent since the children were school-aged youngsters.
Given this, it can not be said that the trial court's decision to adopt the decision of the magistrate was arbitrary, unreasonable, or unconscionable. Under R.C. 3109.04, the trial court had the authority to decide to whom custody of the children should be given. The trial court agreed that appellee's home offered a stable environment, thereby justifying the decision to name appellee as the primary residential parent for school purposes. In reaching this conclusion, the trial court did not abuse its discretion. Appellant's fourth assignment is not well-taken.
In her fifth and final assignment of error, appellant asserts that the trial court abused its discretion by refusing to expand the visitation schedule recommended by the magistrate. Since the trial court decreed that shared parenting was in the best interest of the children, appellant is not technically challenging her right to visitation or companionship. Rather, appellant is really suggesting that she should have been accorded more time as the residential parent of the girls.
After proposing that appellee be named the primary residential parent, the magistrate further suggested that appellant be the residential parent on alternating weekends, overnight on each Wednesday until the following morning, one-half of Christmas break and spring break, and for several weeks in the summer. Appellant's time with the children was modeled on the standard visitation guidelines for a nonresidential parent as set forth in a local rule of the Lake County Court of Common Pleas.
The magistrate's decision was filed on August 18, 1997. Pursuant to Civ.R. 53(E)(3)(a), appellant had fourteen days in which to file objections to the decision. Appellant asked for and received an extension until September 19, 1997 for filing her objections. Thereafter, on that date, appellant filed objections, but they did not include any challenge to the amount of time the girls would spend in her care.
Appellant then attempted to file a supplemental objection on September 30, 1997 in which she requested that the trial court expand the time periods in which the girls would reside with her. In its judgment entry of November 13, 1997, the trial court overruled this objection, in part, because it was untimely filed.
Upon review, we perceive no abuse of discretion by the trial court. Appellant received an extension by which she could file objections to the magistrate's decision through September 19, 1997. Appellant, however, did not file the supplemental objection relating to the temporal division of shared parenting until September 30, 1997. As such, it was untimely, and the trial court did not abuse its discretion by overruling the objection on that ground. Appellant's fifth assignment is without merit.[2]
Based on the foregoing analysis, appellant's assignments of error are not well-taken.
Accordingly, the judgment of the trial court is affirmed.
 ------------------------- JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] The factors listed in R.C. 3109.04(F)(1) are as follows:
"(a) The wishes of the child's parents regarding his care;
"(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
"(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to his home, school, and community;
"(e) The mental and physical health of all persons involved in the situation;
"(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
"(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
"(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *
"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
[2] Of course, appellant is not precluded from moving to modify the allocation of parental rights under the shared parenting plan at some point in the future in accordance with the provisions of R.C. 3109.04.